Arguments not to exceed 15 minutes per side. Mr. Murphy, for the appellant, you may proceed. Good morning, judges. Good morning. I'd like to reserve five minutes for rebuttal at the end, please.   Good morning, judges. Good morning. May I proceed? Yes, please. Thank you. May it please the court. Counsel, the district court made reversible error in dismissing Mr. Libretti's complaint, which alleged the defendant Woodson clearly violated Mr. Libretti's clearly established Fourth Amendment rights. The defendant seized documents and records which were outside the scope of the warrant. The district court concluded, and we agree, that the warrant contagious subject matter limitation. That limitation authorized the seizure of documents and records, provided they contained the evidence of a crime. However, the documents that the defendant seized did not contain the evidence of a crime. Was this issue brought up before the court out west? Where is it? Wyoming? I'm sorry, Your Honor? Was this issue decided by the district court in Wyoming, and that where he was tried for the criminal activity? Yes, Judge Seiler. Mr. Libretti had filed a motion to suppress the evidence in that case. However, the prosecution admitted that there was no evidence found in the search of his residence, and the motion to suppress was rendered moot. Oh, okay. As I said, the documents were not evidenced. They were an excessive seizure outside the scope of the warrant and not authorized by any exception to the warrant requirement. The district court applied the test for an unlawful general search with respect to these documents. However, Mr. Libretti did not contend that it was an unlawful general search of his residence, but rather an excessive seizure. The district court did not and could not conclude that the documents that they ruled were outside the scope of the warrant were in fact an excessive seizure on a 12B6 motion without having actually reviewed what the documents were. The defendant also seized computers and digital data from Mr. Libretti's residence that were outside the scope of the warrant. The warrant also contained a subject matter limitation with respect to the digital data. The computers or digital data to be seized had to either be the instrumentality of a crime or contain evidence of a crime. However, the computers and digital data seized from Mr. Libretti's residence did not contain any evidence of any crime, nor were they instrumentalities of a crime. As I said, also the prosecution in Wyoming admitted this and rendered Mr. Libretti's motion to suppress the evidence moot. The defendant has argued that the seizure of the computers and digital data was reasonable, referencing this court's decision in Guest v. Laius. Well, you're not suggesting that every time an officer gets a search warrant that unless everything that was acquired was put into evidence then it exceeds the scope of the warrant? Are you saying that? No, I'm not suggesting they have to put anything they seize into evidence. Sometimes they collect a lot of things that are authorized under the warrant and it's not material really or relevant to the case, right? Absolutely, that's correct, Your Honor. But in this particular case they were looking for evidence of a crime and the prosecution in the Wyoming case admitted that everything that was seized was not in fact the evidence of a crime. The warrant only authorized the seizure of documents or records or computers and digital data if it was either the evidence of a crime or the instrumentality of a crime. In the Wyoming case they conceded that everything that was seized was neither of these things, thus outside the scope of the warrant. In reference to the defendant's argument that the temporary seizure of computers was legal, he referenced this court's ruling in Guest v. Laius. This court acknowledged the technical difficulties in searching a computer or digital data inside someone's home and they allowed the temporary seizure of computers or digital data for the purpose of investigating what goes on there. However, the requirement is that it's only a temporary seizure for the purpose of investigating the materials that were contained within. Did your client ever get his computer back? No, he did not, Your Honor. Who's got it? Mr. Woodson seized it and we're not certain where it is from there. We know it was seized by him in the service of his... You don't allege Mr. Woodson has it now, do you? We allege he at least has constructive possession as the person who seized it or would be able to return it to him if he were so inclined to do so. Well, the government claims it's turned back, didn't they? The government has returned some of Mr. Libretti's property, but not all of it, and the computer is still not in Mr. Libretti's possession. I'm sorry, Your Honor, I made a mistake. The computer has been returned, but it was not returned in a timely fashion. Oh, okay. So it's back, but you just say he should have sent it back earlier. Yes. I mean, they had reviewed it and found there was no evidence of any crime. It was outside the scope of the warrant, but retained it for a much longer period of time. They retained it until after Mr. Libretti was acquitted of all charges in the Wyoming case, and then he moved for the return of his property at the end of the trial, at which point some of this property was returned, some of it was not. In fact, there was seizure of legal herbs that were also ordered to be returned, which the government then instead destroyed  In reference to the permission to temporarily seize the computers and digital data, under this Court's ruling in guest v. Laius, that's only legal because the courts have been accommodating to the government for the purpose of doing these investigations. However, this Court's also ruled in Blakeney back in 1991 that the seizure of irrelevant data is permissible, only provided that the irrelevant data is returned once they've had a chance to investigate it. Right. Mr. Murphy, assuming that there is a violation of the Fourth Amendment, it appears that the critical issue in the case is whether Woodson is entitled to qualified immunity. Can we get to that? Because whether or not there's a Fourth Amendment violation I don't think is a dispositive issue. It's whether Woodson's entitled to qualified immunity. Yes, Your Honor. Tell me why he's not. He's not entitled to qualified immunity because to be entitled to qualified immunity, or I'm sorry, rather, he cannot raise a defense of qualified immunity if he violates the constitutional right of Mr. Liberti that was clearly established at the time. These Fourth Amendment rights of Mr. Liberti were, in fact, clearly established at the time. It has to be clear to all reasonable officers that what the action that you occurred, that you took, violates the Fourth Amendment. That's your position? Yes. That anyone executing this search warrant, it would be clear to all reasonable officers that the items he seized were not authorized. Is that basically it? Yes. My understanding is that if reasonable police officers could disagree as to whether the seizure was proper, then they are, in fact, entitled to qualified immunity. Okay. So tell me why it would be so apparent to all reasonable officers that you couldn't seize these items. Couldn't seize these items because they weren't authorized by the warrant. Well, okay, now that's technical. I mean, you know, the warrant lists the instrumentalities of the crime. The officer seizes this and that. You're not arguing he intentionally violated the Fourth Amendment, are you? I mean, this is a mistake, isn't it? Honestly, we're not quite so sure. I can't be inside Mr. Woodson's head. Do you allege it was intentional misconduct by the officer? I do believe so. Yes, we do allege that. Okay. Tell me what evidence you have to support that allegation. The inference that we're drawing to come to that conclusion is because they served this search warrant to search Mr. Libretti's residence. They found absolutely nothing, and rather than go home empty-handed, he seized a wide variety of items from his residence. This doesn't show intentional conduct. All right. You know, this is a civil suit. I mean, you can be sanctioned for filing claims that have no support in the record. Anyway, be that as it may, that's all you have. You want us to draw an inference that because he seized items outside the scope of the warrant that therefore he acted intentionally. All right. Tell me, assuming that he acted negligently or recklessly, mistakenly, tell me why all reasonable officers would know that what he did violated the Fourth Amendment, other than that there was a technical violation of the search warrant. I mean, what about these items would make it clear that an officer coming in to execute that warrant would know that these are not within the scope of the warrant? Well, the documents were not voluminous. There was time to actually make cursory examinations of them there. Under Andreessen, a cursory examination of the documents doesn't violate the Fourth Amendment, but seizing documents once that examination has been made and the documents are shown to not in fact be relevant or not in fact to be seized under the warrant, that's a violation of the Fourth Amendment. With respect to the computers, the temporary seizure is in fact allowed. However, the seizure we're contesting is, we're contesting the entire period of the seizure from beginning to end. The seizure can never be said to be temporary until the computer is actually returned. The computer wasn't returned in a reasonable time frame as required under Blakeney per this court's ruling. That's the violation of the Fourth Amendment. Are you maintaining that there was not probable cause for the search, or are you maintaining that the search exceeded the scope of the warrant, or neither one? I'm sorry. We're contending neither. We're not contesting the search with respect to Mr. Libretti's residence. The search was fine. We've abandoned that argument. We're only contesting the seizure as the seizure of various items from his residence were exceeding the scope of what was authorized to be seized. Defendant Woodson also seized some legal herbs from Mr. Libretti's apartment. The warrant didn't authorize the seizure of legal herbs, suspected controlled substances, or any kind of controlled substances whatsoever. The district court, however, ruled incorrectly that the warrant did in fact authorize the seizure of these legal herbs or suspected contraband, which it did not. Does he have to have a warrant if you have contraband or apparent contraband in plain view? You can only seize under the plain view doctrine, Your Honor, if there's an... I'm sorry. I'm running out of time here. May I briefly respond and then conclude? Please. You can only seize under the plain view doctrine if it's apparent contraband, if it has an immediately apparent incriminating character. These legal herbs didn't have any kind of incriminating character. They were in fact legal, much less an immediately apparent incriminating character. Didn't they look like... This is supposed to be the artificial marijuana or artificial something or other, isn't it? They're legal herbs. Wasn't there testimony that that's why they seized them? That's why he seized them, but Defendant Woodson is a seasoned narcotics officer with 15 or 20 years of experience. He's aware that legal herbs or other substances, such as even tobacco, could in fact be sprayed with chemicals. At the time of the seizure, there's approximately 170 chemicals that could be used to create this so-called spice substance. Only six of them were actually federally scheduled substances at the time. A little more than 3% of the chemicals available could be used to make this spice in an illegal fashion. At the same point in time, tobacco or other substances could be sprayed. If Mr. Liberti had a bag of tobacco in his residence, would he have been allowed to seize that? Because it could in fact be sprayed with a small number of illegal chemicals to make it an illegal substance. That's our contention. Thank you. Thank you, Judges. You can turn the light on. You may proceed, Counselor. Good morning, Your Honor. My name is Renee Backus. I am an Assistant United States Attorney in the Northern District of Ohio, and I represent Stephen Woodson, a retired drug enforcement agent, in his individual capacity. Officer Woodson is entitled to qualified immunity for discretionary conduct taken by him that does not violate clearly established law. In deciding whether or not Officer Woodson's actions were reasonable, this Court must look at whether a reasonable officer could have believed his conduct was lawful. In answering the question of qualified immunity, there are two questions that the Court must ask. Whether Woodson violated a constitutional right, and whether that right was clearly established. In this case, the answers to those questions were in favor of qualified immunity. First, addressing the appellant's argument that the District Court in Wyoming, that the AUSA conceded that it was not evidence, that is not my understanding. The AUSA conceded that they would not be using those items as evidence in the criminal trial. And that's why the motion to suppress was moot. The general rule under the Fourth Amendment is that instrumentalities, contraband, as well as evidence may be seized upon probable cause. And if an item is seized, the general rule is that at the conclusion of the criminal trial, that the evidence is returned to the rightful owner. In this particular case, the evidence was returned to Mr. Labretti. If you will take a look at the judge's ruling, Judge Freudenthal from Wyoming, in her ruling on the 41G motion, she indicates that he has received back all the things that were confiscated, except for those things that were destroyed. And the only thing that was destroyed was the DEA lab destroyed the suspected spice. Now, the suspected spice was not authorized per se by the warrant, but nevertheless, it was within the scope of the warrant, because it was reasonably related to the offense to form the basis of the warrant. And the Sixth Circuit has held that the items seized that were not specifically authorized in the warrant may nonetheless still be seized under the scope of the warrant if it is reasonably related to the offense that forms the basis of the warrant. And in this case, the search warrant was issued to search Mr. Labretti's residence for documents and evidence related to three specific crimes. And those crimes were conspiracy to possess with intent to distribute a controlled substance, intent to possess a controlled substance, as well as money laundering. The officer seized suspected spice. And yes, suspected spice, there's five or six chemicals that were listed as of March 1st, 2011, which you use to treat these herbs. And although not all chemicals were considered illegal, if that was being used to, if chemicals that were not necessarily on the Schedule 1 controlled substance was being used, and it was going to be used for human consumption, it is indeed illegal under the Controlled Analog Statute, which is 21 U.S.C. 813. And under the Controlled Analog Statute, chemicals that are used to make these similar controlled substances, they are treated as if it was a Schedule 1 controlled substance. So it was contraband. Well, Mr. Murphy is saying that if it's not apparent that it's something that's illegal, then you can't seize it. How apparent is this spice to somebody to know it's the illegal spice or it's the legal spice? Well, there's no such thing as a legal spice if it is used to be, if it is used for human consumption. And if you take a look at Mr. Libretti's brief at page 32, footnote 2, he concedes that these chemicals, these synthetic cannabinoids are used to spray on Damiano leaves, marshmallow leaves, or sage, and then used to smoke it to produce a relaxing effect. That indeed is a controlled analog substance, and it is illegal because it is being used for human consumption. Was it illegal at the time that it was seized? Yes, sir. The Controlled Substance Schedule 1 listed certain chemicals for making spice as of March 1, 2011. The search occurred on March 30, 2011. How did the officer know this was that substance? I mean, is it something that's got a big leaf or it's got some kind of an identity? It is, my understanding, it's a green leafy substance. This officer is a trained, seasoned narcotics officer. He's worked over 25 years in the investigating, manufacturing, and distributions of controlled substances. He was also aware at the time that they executed the search warrant here in Ohio that prior to that search warrant being executed, that Mr. Libretti was involved in the distribution of spice. And when they searched his home in Wyoming, they did recover suspected spice, but at that time, the chemicals were not listed in the controlled substance list when they did the search of his home in Wyoming. And that's how the officer knew or suspected the spice. And probable cause does not require that the officer know for certain that evidence will prove a fact, only that there's probable cause to believe that it will aid in a particular conviction or apprehension. And so he had probable cause to seize the suspected spice. And as it relates to the other items that Mr. Libretti claims Officer Woodson seized, those items were specifically listed in the search warrant. He was authorized to seize computers. He was authorized to seize documents. And if you look at U.S. v. Henson, this circuit said, quote, a search does not become invalid merely because some items not covered by a warrant are seized. Absent a flagrant disregard for the limitations of a search warrant, the items covered by the warrant will be admissible in a criminal context. In terms of a civil context, in order to be actionable, the search must be objectively unreasonable. In this case, the search was not objectively unreasonable. The officer received a warrant by a magistrate to seize computers and documents, and they seized those computers and documents pursuant to the warrant. Yes, the spice was not specifically listed in the warrant, but it was reasonably related to the drug trafficking offenses that were in the warrant. In terms of the suspected spice, which is a synthetic drug, I would urge this court to take the position, as was set forth in Anderson v. Lingenfelter, which is a district court case that dealt with the exact subject. And that citation is 2013 Westlaw 386-4600, and that's the Western District of Kentucky on July 24, 2013. In that case, the officer seized synthetic drugs in the form of incense, and they also seized glass pipes. The plaintiff in that case alleged that these items were tobacco accessories and should not have been seized. The district court stated, it would be untenable, or rather an impossibility, to restrict officers to seizing only those substances they could readily identify as synthetic drugs. And in that case, they held that the officer's seizure was not unreasonable, and he was entitled to qualified immunity. In terms of seizing documents that may have been outside of the scope of the warrant, this court has also stated that it is inevitable when you are executing a document warrant that some items that may not relate to the underlying proceedings may be seized. And when that occurs, the officer is not required to sift through every document to take out those few that may not be related to those proceedings, but they are to take care in making sure that they seize only those things that are necessary. But the court also recognizes that the officer is entitled to some discretion in determining what is to be seized pursuant to the stated terms of the search warrant. Well, after they look through these documents, who makes the decision as to whether to give them back or not? Does the officer do that, or does the U.S. attorney do it, or somebody else? My understanding is that the U.S. attorney and the officer is in conjunction after they have reviewed it and decided what the case will require, that they do it in conjunction with one another. But what is interesting in this case, Your Honor, is that Officer Woodson is retired, and the items were not in his custody. If you will note that the search warrant return was done by Officer Woodson, but the search warrant inventory was not. When Officer Woodson returned to Wyoming, and this information is not in the record, the evidence was turned over to the Division of Criminal Investigation. And that's who returned the items to Mr. Libretti, according to the District Court of Wyoming. And Officer Woodson, like I said, works for the Drug Enforcement Agency. And just briefly, Your Honor, I'd like to address the issue about the return of the property. In this court, under Fox v. VanOstrom, the police officer and the district attorney were entitled to qualified immunity on the claim that they didn't return items that were seized from the plaintiff. This court noted that once the seizure is complete, the Fourth Amendment no longer applies, and that the Fourth Amendment protects the right to retain possession of property, not regain possession of property. And this, what Mr. Woodson did was, he seized the evidence, and then at that point, the seizure was complete. And therefore, there was no Fourth Amendment violation for the retention of the property. Is there a motion that you can ask for a return of property that's available for a person? Yes, and Mr. Libretti indeed did file a 41-G motion after the criminal proceedings was over in Wyoming, as well as there was a motion filed in Wyoming during the criminal proceedings in which he sought to get the return of at least one computer that was seized from his home in Wyoming, so he was aware that those remedies were not available to him. Okay, so your point is that he's suing under the wrong constitutional provision when he's saying, I'm suing for my Fourth Amendment rights, and it's not the Fourth Amendment, it may be the Takings Clause or the Due Process Clause or something else? What's the point of that argument? The point is, he is arguing that under the Fourth Amendment, he has a right to the return of property. Okay, he does under some other constitutional provision, does he not? He may have a right under the Fifth Amendment, but you're arguing he hasn't labeled his claims right. He hasn't pled his claim correctly as it relates to Officer Woodson. It's a pleading violation. That's true. And in fact, Your Honor, he did not even allege that Officer Woodson was the person who was in possession of these items or that Officer Woodson was the person who had a duty to return these items. Or had authority to do it. Correct. Okay, I think we understand your argument. The Fourth Amendment, I'm sorry, the Qualified Immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. In this case, Officer Woodson did not knowingly violate the law. This was not an intentional violation. And if there was a mistake, he's entitled to Qualified Immunity. And in fact, the plaintiff in asserting the reason for an oral argument claims that the law is unclear. And needs development. Then Officer Woodson did not violate clearly established law. And we would respectfully request that the court would affirm the District Court's decision. Thank you. All right, thank you. Any rebuttal? May I proceed? First of all, Your Honors, the court in Wyoming did not, in fact, rule that all of Mr. Libretti's property was returned. Some of it was returned, but not all of it was returned. Let's see. With respect to the case, the Kentucky case regarding the seizure of the illegal incense or the other synthetic drugs right there, in that case, in fact, the seizure was authorized by the warrant. And furthermore, the test came back and showed that the substance that were seized were in fact illegal synthetic drugs. Illegals are not. However, in that case, had the test shown that the substances were not in fact illegal synthetic drugs and they weren't returned in a timely fashion, that seizure would have also been held illegal. Mr. Murphy, I think Ms. Bacchus makes a pretty good point regarding your statement in support of oral argument. And I'm just going to quote from the first sentence of the second paragraph. Second, the law regarding the Fourth Amendment and the government's retention of document data requires clarification and development. Aren't you in fact conceding that the law is not clearly established by that statement? With respect to the computers, perhaps that may in fact be true, but with respect to the documents, I disagree. All right. With respect to the computers, then you concede that defendant is entitled to qualified immunity then? Not exactly, Your Honor. No. Well, if the law is not clearly established, a defendant is entitled to qualified immunity. Is he not? Yes, that would be correct. Okay. All right. Your statement, the law regarding the Fourth Amendment and the government's retention, I mean, it's a compound thing. Fourth Amendment law is unclear. Government's retention is unclear. Requires clarification and development. I mean, you're throwing the whole Fourth Amendment there. We're willing to concede that point for the purposes of qualified immunity. Well, at the end of the case, then, the law is not clearly developed as to the Fourth Amendment issues in your case. Defendant has qualified immunity. I respectfully disagree, Your Honors. With respect to the computers, that would be the case, but there were other elements of the complaint that were other elements leading to the dismissal of the complaint where the law is clearly established and the seizure was illegal under the Fourth Amendment. With respect to the documents that were seized, I mean, these documents were so far outside the scope of the warrant that no reasonable officer could have concluded they should have been seized. These were correspondence between Mr. Libretti and an attorney regarding end-of-life decisions, things along those lines, legal documents from previous cases, printout of case law, everything that was being issued. With respect to the... I'm sorry. Excuse me. With respect to Mr. Woodson's claims that the Fourth Amendment protects rights in retaining property but not the return of property, that was referenced in the Fox v. Van Ooster Run. However, this case can be distinguished from that case. In that case, the seizure of the license was valid. It was an inventory seizure pursuant to a DUI charge. In this case, the seizure was not determined whether the property was seized or not, so they were allowed to seize them temporarily for the purpose of examining. That seizure, in fact, is never exactly proper if they weren't, in fact, supposed to be seized in the first place upon further investigation. This court has allowed something of a retrospective analysis to determine if a temporary seizure was, in fact, proper later. In this particular case, it was shown that some of the things that were discussed  were not true. The dissent in Fox v. Van Ooster Run regarding the case U.S. v. Place talking about how the Fourth Amendment requires a reasonable balancing of multiple interests here regarding Mr. Libretti's possessory interest in the property that was seized and the government's interest in seizing it. Upon the investigation... Of course, the dissent is supposed to be regarded as heresy. Understood. Yes, it is. But, I mean, because that case was different than this case, the points made in dissent actually apply a lot better here. You see, Mr. Libretti had a possessory interest in some of the materials that were seized. The government also had an interest in investigating the crime. However, once that crime was investigated and found to not be a crime whatsoever and the materials that were seized were evidence of any crime, the government no longer had any legitimate interest in the property. Mr. Libretti's possessory interests were still being offended by the continued retention of this property and should have been returned to him. Any further questions for me, judges? Apparently not. Thank you very much.